UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

JANET REYNOLDS,

                      Plaintiff,

          -against-

AMERICAN AIRLINES, INC.,

                   Defendant.
-------------------------------------------------------- X

**MEMORANDUM AND ORDER**
14 CV 2429 (CLP)

**POLLAK**, United States Magistrate Judge:

      On February 24, 2014, plaintiff Janet Reynolds commenced this action against defendant

American Airlines, Inc. ("defendant" or "American Airlines") in the Supreme Court of the State

of New York, Queens County, seeking damages for personal injuries she allegedly suffered

when the right rear door of an American Airlines 767 airplane fell down on her back, knocking

her to the floor of the plane.  Defendant removed the action to the Eastern District of New York

on April 15, 2014.  On May 13, 2014, the parties consented to proceed before the undersigned.

Trial is scheduled to commence on November 27, 2017.

      Currently pending before the Court are the parties' pre-trial motions *in limine*, as well as

plaintiff's motion for a missing witness charge.

DISCUSSION

**A.  Legal Standards**

1.  Motions in limine

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 40 n.4 (1984).  "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011); accord Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (explaining that *in limine* rulings "aid the trial process" by providing the court with the opportunity to decide the issue of admissibility "without lengthy argument at, or interruption of, the trial").  "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001).  Thus, the party moving *in limine* "bears the burden of establishing that evidence is inadmissible for any purpose and so properly excluded[.]" United States v. Johnson, No. 16 CR 457, 2017 WL 5125770, at *2 (E.D.N.Y. Sept. 21, 2017).  "Courts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." United States v. Johnson, 2017 WL 5125770, at *2 (quoting Jean-Laurent v. Hennessy, 840 F. Supp. 2d at 536).  "The ruling is subject to change when the case unfolds[;] [i]ndeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." Luce v. United States, 469 U.S. at 41–42.[1]

---

[1] This does not mean that the parties may ignore the Court's *in limine* rulings at trial, for

2. Expert Witnesses

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702.  The text of Rule 702 makes it clear that there are two prerequisites that must be met before the testimony of an expert witness can be admitted into evidence.  First, the trial court must ensure that the witness is properly qualified as an expert to testify on matters that are scientific, technical, or specialized in nature, see Stagl v. Delta Air Lines, Inc., 117 F.3d 76, 81 (2d Cir. 1997); and second, the trial court must determine that the expert's testimony will assist the trier of fact in understanding the evidence or determining an issue of fact.  See Campbell v. Metro. Prop. & Cas. Ins. Co., 239 F.3d 179, 184-85 (2d Cir. 2001) (noting that determining whether expert testimony will assist the fact finder "'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue'") (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993)); United States v. 31-33 York Street, 930 F.2d 139, 141 (2d Cir. 1991) (excluding expert testimony that would only complicate, not assist, the jury's decision on "a simple question for which the jury needed no help"); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999).

---

they remain the Order of the Court unless altered.  Instead, any party may, out of the hearing of the jury, seek reconsideration of an *in limine* ruling based on the evidence adduced at trial.

In short, the trial court functions in a "gatekeeping" capacity and must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 597; see also Zuchowicz v. United States, 140 F.3d 381, 386 (2d Cir. 1998); Borgognone v. Trump Plaza, No. 98 CV 6139, 2000 WL 341135, at *3 (E.D.N.Y. Mar. 9, 2000); Textron, Inc. v. Barber-Colman Co., 903 F. Supp. 1546, 1552 (W.D.N.C. 1995). The question of the admissibility of expert testimony is for the trial judge to resolve and the court has "broad discretion" in making that determination. United States v. Feliciano, 223 F.3d 102, 120 (2d Cir. 2000), cert. denied, 532 U.S. 943 (2001); Palazzetti Import/Export, Inc. v. Morson, No. 98 CV 722, 2001 WL 793322, at *2 (S.D.N.Y. July 13, 2001).

**B. Plaintiff's Motions *in Limine***

On November 3, 2017, the plaintiff filed her omnibus motion *in limine* seeking to limit the introduction of testimony from various witnesses and documents from various sources. (See Pl.'s MIL,[2] Nov. 3, 2017). The Court addresses each request in turn.

1. Motions to Preclude Expert Testimony

a. Motion to Preclude the Testimony of William Meyer, P.E.

Plaintiff moves to bar the testimony of defendant's liability expert, William Meyer, P.E., on biomechanics, impact kinematics, and injury causation and to further preclude defendant from offering these theories as affirmative defenses. (See Pl.'s MIL at 1-4). Plaintiff argues that this expert testimony is "unreliable," because the witness failed to inspect the airplane door

---

[2] Citations to "Pl.'s MIL" refer to plaintiff's Motion *in Limine* filed on November 3, 2017, ECF No. 84.

immediately after the accident and he based his analysis on insufficient facts and data.  (Id. at 3).

She further contends that such testimony is beyond the witness' expertise because he is not a

medical doctor and cannot opine on the cause of medical injuries, nor is he a biomechanical

expert, and thus his testimony would not be helpful to the trier of fact.  (See id. at 3-4).

In her motion, plaintiff seems to focus on one sentence at the end of Mr. Meyer's report

that states:  " Ms. Reynolds['] alleged accident does not comport with a kinematic analysis of the

event based on her described movement and point of contact and the characteristics of the door

open."  (Meyer Report at 5, Ex. A to Pl.'s MIL, ECF No. 87-1).  A review of the entire report

demonstrates that Mr. Meyer's analysis, apart from this one sentence, does not provide an

analysis of how the door caused the specific medical injuries that plaintiff is claiming which

would be consistent with a biomechanical expert's opinion.  Instead, Meyer's report focuses on

the mechanics of the door and the physics of how the door opens and descends. As a professional

engineer, Mr. Meyer is qualified to make such an analysis and to opine on the way in which the

door would have descended in relation to an individual moving through or standing underneath

it.  Apart from his training and education as an engineer, Mr. Meyer's curriculum vitae indicates

that he has had experience in "accident reconstruction," and thus is qualified to opine on

plaintiff's version of events given the physics of the door's operation and mechanics.  (See

Meyer CV, Ex. A to Pl.'s MIL).

Accordingly, the Court denies the motion to preclude Mr. Meyer's testimony except to

the  extent that he discusses the "kinematic analysis."  In order for the opinion to be helpful to

the jury, Mr. Meyer will need to define kinematics and explain what it means.  However, to the

extent the Court understands that it is a reference to a branch of mechanics that describes the

motion of points, objects, and systems of objects, that would be within his expertise as an engineer and would be something to which he could testify upon laying a proper foundation.

b. Motion to Preclude the Testimony of Joseph Pessalano, M.A., CRC

Plaintiff also moves *in limine* to preclude the testimony of Joseph Pessalano, defendant's rehabilitation specialist. (See Pl.'s MIL at 4-5). Plaintiff argues that Pessalano's proposed testimony is unreliable, beyond his expertise, and not helpful to the trier of fact. (Id.) Plaintiff contends that he is not a medical doctor, never personally examined the plaintiff, and cannot opine on the causation of her injuries. (Id.)

A review of his report, however, demonstrates that Mr. Pessalano does not offer an opinion about the causation of her injuries; his opinion relates to the plaintiff's ability to work at certain jobs. (See Pessalano Report, Ex. B. to Pl.'s MIL, ECF No. 87-2). Vocational rehabilitation specialists regularly testify about a plaintiff's capacity to participate in the workforce based on their physical and mental abilities, the potential for rehabilitation to improve ability to join the workforce, availability of jobs, and the like. See Kavanagh v. Ogden Allie3d Maintenance Corp., 92 N.Y.2d 952, 954-55, 705 N.E.2d 1197, 1198, 683 N.Y.S.2d 156, 157 (1998); see also Morgan v. Jacques, 08 CV 64, 2010 WL 11537864, at *3 n.1 (D. Vt. Oct. 5, 2010) (observing that vocational rehabilitation specialists regularly satisfy Daubert when testifying as to an individual's rehabilitation, access to jobs, placeability in suitable jobs, earning capacity, and labor force participation); but see Thalrose v. United States, No. 85 CV 0142, 1991 WL 148502, at *3 (E.D.N.Y. July 17, 1991) (suggesting the testimony of experts such as vocational rehabilitation specialists is "useless").

Moreover, while plaintiff objects to Mr. Pessalano's reliance on the reports of other experts, including the defendant's expert narrative reports, plaintiff fails to cite any provision of the Federal Rules of Civil Procedure that prohibits an expert from reviewing another expert's reports in order to come to his conclusions.  In fact, Rule 703 of the Federal Rules of Evidence specifically contemplates that an expert witness may rely on inadmissible facts or data, so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."  Fed. R. Evid. 703; see Gill v. Arab Bank, PLC, 893 F. Supp. 2d 523, 532 (E.D.N.Y. 2012) (rejecting argument that an expert and his report should be disqualified for reliance on inadmissible hearsay).

Accordingly, the motion to preclude Mr. Pessalano from testifying is denied.

c. Motion to Preclude the Testimony of Jessica Berkowitz, M.D.

Plaintiff seeks to preclude the testimony of defendant's radiological expert, Jessica Berkowtiz, M.D., on the grounds that she is not qualified to opine on the causation of plaintiff's injuries because she never personally examined plaintiff and only reviewed the diagnostic films. (Pl.'s MIL at 5-6).  A review of the doctor's report and curriculum vitae indicates that she has specialized training in neuro-radiology and therefore is qualified to review diagnostic films and interpret those films based upon her review.  (See Berkowitz Report, Ex. C to Pl.'s MIL, ECF No. 87-3).  Her opinion as to whether the injuries she observed on those films were traumatic or degenerative in nature is clearly within the scope of her expertise and training as a medical doctor and radiologist.  Nowhere in her papers does plaintiff cite any authority that would support preclusion of a radiologist's testimony based upon the doctor's failure to examine the patient directly.

7

Accordingly, the motion to preclude Dr. Berkowitz's testimony is denied.

2. <u>Motion to Preclude the Testimony of Mr. DuBreuil</u>

Plaintiff seeks to preclude the defendant from introducing into evidence the transcript of defendant's fact witness, Robert DuBreuil, on the grounds that it would violate the Due Process Clause and the right to confront and cross examine witnesses. (<u>See</u> Pl.'s MIL at 6-8). Plaintiff argues that because American Airlines is not producing the witness at trial, it should not be allowed to use the transcript of his prior testimony, even though the plaintiff has designated portions of such testimony for use in her case in chief. (<u>See id.</u>; <u>see also</u> Amended Joint Pre-Trial Order, Nov. 6, 2017, ECF No. 90).

Defendant argues that the examination of Mr. DuBreuil, as reflected in the transcript, was actually conducted by plaintiff's co-counsel, who was given a full and fair opportunity to question the witness thoroughly on all of the plaintiff's claims and American's defenses. (Def.'s Opp'n at 8, Nov. 13, 2017, ECF No. 94). The issue of missing records, which is at the heart of plaintiff's objection to the witness' deposition transcript, was known to the plaintiff's counsel at the time of the deposition; the fact that plaintiff's new counsel is now dissatisfied with the extent to which her co-counsel delved into the details of these records does not provide a basis for claiming a due process violation. (<u>Id.</u> at 8-10).

As was discussed at an earlier court conference, Mr. DuBreuil resides in Irving, Texas, well beyond the boundaries of the subpoena power of this Court. Indeed, the witness was deposed by video conference while he was in Texas. The defendant designated him as the appropriate Rule 30(b)(6) witness because at that time, over three years ago, he held a position within the company that rendered him most knowledgeable as to the relevant facts. At the time of the deposition, defendant claims that it did not know—and plaintiff has presented no evidence

8

to suggest otherwise—that the witness would retire before the trial and be unwilling to travel to New York.  Having now retired, Mr. DuBreuil is no longer within the control of American Airlines and cannot be compelled to travel to New York.

When the issue was first brought to the attention of the Court and plaintiff's counsel, there were several options offered, including the designation of a substitute witness with the opportunity for a new deposition; use of the deposition transcript; a subpoena out of the district in Texas for a videotaped deposition *de bene esse* of the witness; or a subpoena for testimony by contemporaneous transmission under Rule 43(a) of the Federal Rules of Civil Procedure.  (See Minute Entry, Oct. 12, 2017, ECF No. 73).  Plaintiff made no attempt to avail herself of the other procedures offered by the Court and the Federal Rules of Civil Procedure, and thus chose to proceed with the deposition transcript.  She cannot now complain that she has been deprived of her Due Process rights under the circumstances.

Defendant's use of Mr. DuBreuil's deposition testimony is also proper under Rule 32 of the Federal Rules of Civil Procedure, which provides that:  "A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:"  "that the witness is more than 100 miles from the place of hearing or trial," Fed. R. Civ. P. 32(a)(4)(B), or "that the party offering the deposition could not procure the witness's attendance by subpoena."  Fed. R. Civ. P. 32(a)(4)(D).  Mr. DuBreuil, who resides in Texas, is clearly more than 100 miles from the courthouse in Brooklyn, and thus the defendant may use his deposition testimony.

Plaintiff's motion to preclude the defendant's use of DuBreuil's depositions testimony is therefore denied.

3.  Motion to Preclude the Testimony of Jerome Harvey

Plaintiff seeks to preclude the introduction of deposition testimony of non-party witness Jerome Harvey, one of plaintiff's co-workers, on the basis that he is not "unavailable" within the meaning of Rule 32 of the Federal Rules of Civil Procedure. (Pl.'s MIL at 8-9). Defendant responds by explaining that it has issued a subpoena to secure Mr. Harvey's attendance at the trial of this matter. (Def.'s Opp'n at 10-11). If Mr. Harvey complies with the subpoena, he will attend trial and present live testimony, rendering plaintiff's motion moot. If he fails to attend despite a valid subpoena, or if he is unable to be served, defendants will have satisfied Rule 32. (Id. at 11).

While it is unknown whether Mr. Harvey will appear at trial, if he fails to appear, by issuing and serving a subpoena for his attendance the defendant will have demonstrated that it "could not procure the witness's attendance by subpoena," Fed. R. Civ. P. 32(a)(4)(D), and thus "may use for any purpose the deposition of" Mr. Harvey. Fed. R. Civ. P. 32(a)(4). Plaintiff's motion to preclude the deposition testimony of Mr. Harvey is therefore denied.

4.  Motion to Preclude Cumulative Records and Exhibits

Plaintiff moves to preclude defendant from producing cumulative medical reports, diagnostic tests, incident reports, and maintenance records to avoid confusion to the jury. (See Pl.'s MIL at 9-10). As was discussed at the pretrial conference, the parties are Ordered to confer and agree on the exhibits to be used at trial, and only one set of each will be admitted into evidence.

**C.  Defendant's Motions *in Limine***

    1.  <u>Defendant's Motion to Preclude Dr. Ikezi as an Expert Witness</u>

Defendant American Airlines moves to preclude plaintiff's treating physician, Dr. Stanley Ikezi, M.D., from testifying as to any issues outside of his treatment of the plaintiff because the plaintiff did not file an expert disclosure pursuant to Rule 26(a)(2)(B) and did not provide a narrative report.  (<u>See</u> Def.'s Ikezi MIL, Nov. 3, 2017, ECF No. 82).  Defendant notes that on December 20, 2016, plaintiff served an Expert Disclosure, designating the doctor as a potential expert witness for trial.  However, plaintiff did not attach a narrative report but simply provided the operative report detailing the performance of the discectomy that the doctor performed.  (<u>Id.</u> at 1; <u>see also</u> Pl.'s Designation of Ikezi, Ex. A. to Def.'s Ikezi MIL).  Subsequently, on March 21, 2017, plaintiff provided another operative report of the doctor regarding his insertion of a stimulator into plaintiff's back.  (Def.'s Ikezi MIL at 1).  Defendant argues that neither of the reports that have been provided satisfy the requirements of Rule 26(a)(2)(B).  (<u>See</u> <u>id.</u>)

In the Joint Pretrial Order, Dr. Ikezi's proposed testimony is described as including "the permanent physical disability of Plaintiff, as a direct result of the accident," the "substantial physical limitations and restrictions" plaintiff faces, and the causal relationship of the injuries to the subject accident.  (<u>See</u> Am. Joint Pre-Trial Order ("JPTO") at 11-12, Nov. 6, 2017, ECF No. 90).  Rule 26(a)(2)(B) requires that an expert witness produce a report that contains, among other things:  1) a complete description of all opinions the witness will express and the reasons for them; 2) the data or information considered by the witness; 3) exhibits used to summarize or support the opinions; and 4) information regarding the witness's qualifications, including publications, other testimony, and compensation.  <u>See</u> Fed. R. Civ. P. 26(a)(2)(B).  Treating

physicians may be called to testify at trial "without any requirement for a written report." Fed. R. Civ. P. 26(a)(2)(B) advisory committee note on 1993 amendment. However, when there is no expert report provided, the treating physician may only testify as to facts acquired and opinions formed during the treatment of the patient. See, e.g., Ali v. Connick, No. 11 CV 5297, 2016 WL 3002403, at *9 (E.D.N.Y. May 23, 2016).

Courts have not yet fully developed the standard by which to determine the extent of the disclosures required of a treating physician who seeks to offer testimony beyond facts acquired and opinions formed during the physician's personal consultation with and treatment of the patient. One court in this district has relied on the 2013 addition of Rule 26(a)(2)(C), which requires a disclosure from experts who do not provide a full written report under Rule 26(a)(2)(B), as adding to a court's "limited toolbox." See Ali v. Connick, 2016 WL 3002403, at *8. That court therefore concluded that a treating physician may provide "testimony that also includes reliance on outside sources, such as another doctor's records or opinions or facts acquired as part of the litigation," so long as the party provides a written disclosure setting forth the subject matter of the witness's expected expert testimony and a summary of the facts and opinions to which the expert will testify. See id. at *8; Fed. R. Civ. P. 26(a)(2)(C). Under this view, a treating physician need only provide a full written report under Rule 26(a)(2)(B) when "circumstances suggest the doctor was 'retained or specially employed to provide expert testimony.'" Ali v. Connick, 2016 WL 3002403, at *9 (quoting Fed. R. Civ. P. 26(a)(2)(B)).

Although the Court agrees that the addition of Rule 26(a)(2)(C) does allow for a sort of middle ground, where an expert witness need not produce the detailed report required by Rule 26(a)(2)(B), it is unclear how courts should determine whether circumstances suggest a doctor was "retained or specially employed to provide expert testimony." See id. The Court is also

persuaded by the reasoning of other courts that where a "[p]laintiff['s] treating physicians are opining on causation—either specific or general—[d]efendants are entitled to full Rule 26(a)(2)(B) reports because such opinions go beyond those arising from treatment." In re Denture Cream Prods. Liab. Litig., No. 09 MD 2051, 2012 WL 5199597, at *5 (S.D. Fla. Oct. 22, 2012).

This Court need not take a position on when a treating physician must provide a full Rule 26(a)(2)(B) report and when a disclosure under Rule 26(a)(2)(C) will suffice.  Plaintiff's disclosure is clearly inadequate under either standard.  Plaintiff's disclosure only describes in the most general and conclusory of terms the matters as to which Dr. Ikezi is expected to testify. (See Pl.'s Expert Disclosure at 2, Ex. A to Def.'s Ikezi MIL, ECF No. 82-1).  The disclosure provides no specificity with respect to Dr. Ikezi's expected expert testimony as distinguished from his factual testimony as a treating physician, and merely seeks to incorporate the attached operative reports as if they were sufficient to provide the information required by Rule 26(a)(2). The operative reports contain information and opinions gained during the course of treatment, but shed no light on what evidence Dr. Ikezi might seek to introduce under Federal Rules of Evidence 702 and 703.  Furthermore, nothing in the disclosure gives notice of how Dr. Ikezi might have arrived at an opinion about causation of plaintiff's injuries, the degree of future disability, and the cost of future medical care.  Perhaps more importantly, none of the records attached to the disclosure contain any of this information, which suggests that, rather than forming such opinions during the course of treating Ms. Reynolds, Dr. Ikezi has formed or will form those opinions solely for purposes of testifying at trial.

Given that the plaintiff has not provided a sufficient disclosure from Dr. Ikezi under Rule 26(a)(2)(C) or a written report from him under Rule 26(a)(2)(B), the defendant's motion *in*

13

*limine* is granted.  Dr. Ikezi may testify only to those facts acquired and opinions formed during his treatment of the plaintiff, as reflected in his contemporaneously-generated medical records.

2.  <u>Defendant's Motion *in Limine* to Preclude the Testimony of Captain Douglas Moss</u>

Defendant seeks to preclude the testimony of plaintiff's expert witness Captain Douglas Moss on several grounds:  1) he lacks the technical, scientific knowledge necessary to render an opinion on defendant's negligence; 2) his testimony is speculative, conclusory and not based on scientific testing or principles; and 3) his testimony is being offered to bolster the credibility of the plaintiff.  (<u>See</u> Def.'s Moss MIL at 1, Nov. 3, 2017, ECF No. 83).

Captain Moss' testimony includes the following opinions, "within a reasonable degree of aeronautical engineering certainty:"

1)  American Airlines had a statutory duty to record the defective service door when it was brought to their attention.

2)  If the airlines took the proper action to remedy the defect, they had a statutory duty to record the remedial action.

3)  The airlines should not have released the plane after it was aware of the defective door until it was remedied and the remedy was recorded.

4)  "The cause of the door hitting Ms. Reynolds in her back is most likely a malfunctioning door lock mechanism compounded by a maladjustment of the spring counterbalance in the door.  This injury to Ms. Reynolds, or to any other individual who passed through this doorway, was foreseeable to [American Airlines] since they were made aware of the defective door mechanism as relayed by Ms. Reynolds on previous occasions regarding the same aircraft.  This uncorrected door lock mechanism and maladjustment of the spring counterbalance would have caused it to fall with greater acceleration and thus would have attained a higher speed than normal.

(Moss Report at 2, Ex. A to Def.'s Moss MIL, ECF No. 83-1).

14

Defendant argues that during Captain Moss's deposition, it became clear that Captain Moss relied solely on the hearsay statements of the plaintiff in reaching his conclusions. Moreover, although he opines that the locking mechanism of the door is defective, he testified during his deposition that the incident could also have been caused by the improper locking of the door by one of plaintiff's co-workers.  (See Moss Dep. 55:12-56:20).

Defendant argues that the case is similar to Viscusi v. Proctor & Gamble, No. 05 CV 1528, 2007 WL 2071546 (E.D.N.Y. July 16, 2007), where the plaintiff sued for injuries she suffered after applying a hair dye manufactured by the defendant.  In precluding the testimony of plaintiff's medical expert, an internist, who was not Board certified in dermatology, allergies, or neurology, the court noted that the doctor had never authored any articles, never been qualified as an expert, and never been involved in peer review.  See id. at *3.  Defendant argues that Captain Moss is a United Airlines pilot who has never repaired airplane doors, never operated one except in simulated pilot training operations, and had never examined an exemplar door until two weeks before his deposition when he looked at a door on an aircraft owned by United Airlines.  (See Def.'s Moss MIL at 11).  As of the date of this Order, the Court does not know if the plane was manufactured in the same way or if the doors on the two planes function in the same manner to be comparable for purposes of opining on the locking mechanism.

Plaintiff argues that the captain is fully qualified to testify, having worked in the airline field for 27 years and being familiar with both the Boeing B-767 and B-757 planes.  As a captain, he is responsible for the operation of the plane, including ensuring that all maintenance checks and documentation are in compliance with the rules governing commercial airline service.  His academic education includes both a Bachelor of Science and a Masters in engineering and apart from his experience as a pilot, he is the Managing Member of AeroPacific

15

Consulting LLC, which provides aviation related accident investigation, consulting, training and research services.

The Court finds Captain Moss to be qualified to testify about the maintenance requirements, reporting requirements, and the operation of the aircraft.  However, his opinion that the defendant was under a duty to record the malfunctioning door and failed to do so is of little relevance to this litigation.  The regulations Captain Moss cites, 14 C.F.R. §§ 121.701, 709, relate to the flight safety of the aircraft.  Captain Moss's report makes it clear that the purpose of the regulations is to ensure safe flight operations, not safe ground operations.  (See, e.g. Moss Report at 11 (explaining the regulation relates to "airworthiness"); id. at 12 (noting that records must be maintained for defects that affect "flight safety" and that defects must be repaired "before the airplane flew again")).  Captain Moss concludes, based on plaintiff's statements, that there must have been a defect, that the defendant did not record the defect, and that the defendant "should not have released [the aircraft] for flight" "until [the defect] was adequately remedied and that remedial action was properly recorded."  (Moss Report at 15-16).  The majority of Captain Moss's opinions thus relate either to what the defendant should have done after the plaintiff's alleged injury for the protection of passengers and crew, or after the defect became known to American Airlines.  (See id.)  Even if the defendant failed to comply with its record-keeping duties after the plaintiff's alleged injuries, such a record-keeping failure—which relates to flight safety—has nothing to do with plaintiff's alleged injuries; it cannot be argued that the failure to report and maintain a record after the fact caused the plaintiff to be injured.  Such testimony is not, therefore, helpful to the jury in determining whether the defendant acted negligently and thus caused the plaintiff's injuries.  See Fed. R. Evid. 702(a).

At this point, it is unclear to the Court what relevance the post-accident records implicated by 14 C.F.R. § 121.701 would have in proving negligence. Even if relevant, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." Fed. R. Evid. 407; see also D'Nelson v. Costco Wholesale Corp., No. 03 CV 219, 2007 WL 914311, at *4-5 (E.D.N.Y. Mar. 23, 2007) (collecting cases). Even if the testimony was offered to suggest that the accident would not have occurred if the airline had received notice of the defect prior to the accident, plaintiff has provided no authority to support this argument. Indeed, plaintiff's argument appears to be an expanded *res ipsa loquitur* argument—namely, that the absence of records demonstrates that the airline must have been negligent. However, the argument hinges on a number of highly contested facts, including whether a report of the defect was made to American Airlines prior to the accident and whether there was a defect that required reporting and repair. Thus, even if the testimony were helpful, it runs the risk of misleading the jury and confusing the issues, for it suggests that failure to comply with the recordkeeping requirement imposed by regulation, whether such failure occurred before or after the plaintiff was allegedly injured, establishes the defendant's negligence with respect to the incident, even in the absence of proof of causation. The significant risk of misleading the jury and confusing the issues far outweighs the minimal probative value of Captain Moss's testimony regarding general recordkeeping requirements, which relates primarily to the collateral issue of the defendant's alleged spoliation.[3] See Fed. R. Evid. 403.

---

[3] In denying plaintiff's motion for a mandatory adverse inference, the Court previously concluded that the defendant had a duty to preserve certain maintenance records, but that such a

It is also unclear whether even general testimony as to the recordkeeping requirement would be relevant to the issues in this case or helpful to the jury, since Captain Moss explains that the relevant regulation addresses "flight safety," not ground safety, and appears not to provide a standard of care with respect to this type of incident.  (See Moss Report at 11-12).  Even if the Court determines the regulation may be used to provide a standard of care, the very source plaintiff relies on to request a jury charge explains that "[i]t is error to permit a party to attempt to prove negligence by expert testimony regarding the meaning and applicability of a statute or regulation imposing a standard of care."  1A New York Pattern Jury Instructions— Civil 289 (3d ed.); see id. (collecting cases).

The Court precludes Captain Moss's proposed testimony on the recordkeeping requirement unless plaintiff can explain why such testimony is relevant and supports its explanation with clear authority from case law.

_____

duty may not have arisen prior to the routine destruction of the records pursuant to defendant's record retention policy.  (See Order at 7-8, Jan. 7, 2016 ECF No. 35).  Even assuming the duty to preserve arose before the documents were destroyed, the Court determined that there was only a speculative showing of culpable conduct and insufficient evidence that the allegedly-spoliated documents were relevant to support an adverse inference.  (See id. at 8-10, 10-12).  The Court therefore ruled that plaintiff would be able "to present her arguments based on the absence of the subject records at trial," and the defendant would have the opportunity "to present its arguments about the irrelevance of the missing evidence."  (Id. at 12).  That remains true today; the plaintiff may use the deposition testimony of Robert DuBreuil—the same testimony cited in her motion for an adverse inference—regarding the defendant's recordkeeping policy and the content of such records.  She may also rely on her own testimony, as well as that of other witnesses, to present her arguments about the absence of the records at trial.  (See id.)  It does not necessarily follow, however, that she may use an expert witness to make those arguments, especially when the expert witness will testify only as to the general requirements under federal regulations, which may not correlate directly to the specific records at issue here.  (See id. at 2-4 (summarizing DuBreuil's deposition testimony regarding the different inspections performed by American Airlines)).

With respect to his opinion regarding a defect in the plane door, Captain Moss has listed no experience as to the specific operation or configuration of the door in question and, more importantly, there is no scientific or engineering basis for his opinion regarding the alleged defect in the door.  Indeed, defendant argues that while Moss has an engineering degree, he does not base his opinion regarding the alleged defect in the door on engineering principles; rather, his whole opinion on the possible door malfunction is speculative because he relies solely on plaintiff's statement that the door hit her in her back and his observations as to the movement of the door, something that is within the ability of the jury to observe without the help of an expert.  See Fed. R. Evid. 702(a).  (See Def.'s Moss MIL at 12-14).

Defendant also argues that there is no connection between Moss's opinion as to the defect and any data.  See General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  As the court in Viscusi noted, a trial court in determining whether to admit expert testimony, should consider "(1) whether a theory or technique relied on by an expert can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error; (4) whether the theory or technique has been generally accepted in the relevant community; (5) whether the discipline itself lacks reliability; (6) whether an expert's methodology is experience-based, whether the methodology has produced erroneous results in the past and whether the methodology has been generally accepted in the relevant community; and (7) whether an expert's method is a kind that others in the field would recognize as acceptable."  Viscusi v. Proctor & Gamble, 2007 WL 2071546 at *7.  Here, Captain Moss's testimony fails on all grounds.  He does not utilize any theory or technique that could be replicated or tested; he simply relies on the plaintiff's testimony that the door came down on her back to conclude that there was a defect in the locking mechanism.  However, as was made clear

19

during his deposition, Captain Moss cannot say with any degree of certainty that there was a defect in the door that caused it to malfunction.  Indeed, when pressed, he admitted that the door could have fallen if a co-worker failed to "lock" it in place.  (See Moss Dep. 55:12-56:20; id. 57:11-60:11 (acknowledging that Moss has no way of determining whether operator error or a broken locking mechanism caused the accident, other than plaintiff's statements)).  Thus, there is no scientific basis for his opinion; he is simply speculating on what may have happened based on what plaintiff has said.

Defendant contends that it would be prejudicial for the jury to consider Captain Moss's testimony to the extent that it is based on credibility assessments of the plaintiff.  (Def.'s Moss MIL at 15-18).  In Nimely v. City of New York, the Second Circuit noted that it has "disapproved of the practice of expert witnesses basing their conclusions on the in-court testimony of fact witnesses, out of concern that such expert testimony may improperly bolster the account given by the fact witnesses."  414 F.3d 381, 398 (2d Cir. 2005).  Defendant argues that if the captain is allowed to testify that he believed the plaintiff's statements and thus based his conclusions on them, this will suggest to the jury that they too should believe the plaintiff's statements.  (Def.'s Moss MIL at 17).  Since "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," courts must exercise heightened control over the admission of such evidence.  Daubert, 509 U.S. at 595.

Having reviewed Captain Moss's proposed testimony regarding the alleged defect in the airplane door, the Court concludes that his testimony would not be helpful to the jury because his opinion in no way relies on his training and experience as an engineer and pilot.  See Fed. R. Evid. 702(a).  Furthermore, to the extent his opinions express his view that plaintiff's testimony is credible, without reference to other data, such testimony would be more prejudicial than

probative and poses an inordinate risk of misleading the jury, particularly given that Captain

Moss seeks to testify as an expert.  See Fed. R. Evid. 403; Nimely v. City of New York, 414 F.3d

at 398.

For the reasons set forth above, the defendant's motion to preclude the testimony of

Captain Moss regarding the defect in the door is granted.  The Court reserves decision as to the

remainder of the motion pending plaintiff's submission explaining, with citation to case law,

how Captain Moss's proposed testimony regarding recordkeeping is relevant.

3. Defendant's Motion *in Limine* to Preclude Lump Sum and *Per Diem* Arguments
Regarding Non-Economic Damages

Defendant moves to preclude plaintiff's counsel from mentioning a specific dollar figure,

whether lump sum or *per diem*, to compensate plaintiff for non-economic damages in either the

opening or closing arguments.  (See Def.'s Damages MIL at 1, Nov. 3, 2017, ECF No. 81).  The

defendant contends that such arguments are improper because there is no factual basis upon

which to calculate damages that are, by definition, not susceptible to objective measurement.

Defendant further argues that suggesting a figure for non-economic damages "anchors" the jury

in rendering a verdict, resulting in an excessive verdict "inordinately influenced by an arbitrary

and irrelevant number."  (Def.'s Damages MIL at 2 (quoting Gretchen B. Chapman & Brian H.

Bomstein, The More You Ask For, the More You Get:  Anchoring in Personal Injury Verdicts,

10 Applied Cognitive Psychology 519 (1996)).

 "[T]he Second Circuit 'stated in the context of monetary awards *for pain and suffering*

that "specifying target amounts for the jury to award is disfavored."'"  Jean-Laurent v. Hennessy,

840 F. Supp. 2d 529, 558 (E.D.N.Y. 2011) (emphasis in original) (quoting Edwards v. City of

New York, No. 08 WL 2748665, at *2 (E.D.N.Y. July 13, 2011) (quoting Consorti v. Armstrong

21

World Indust., Inc. 72 F.3d 1003, 1016 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031

(1996))).  In other contexts, the Second Circuit has favored a "flexible approach" to such

arguments, reasoning that "[i]t is best left to the discretion of the trial judge, who may either

prohibit counsel from mentioning specific figures or impose reasonable limitations, including

cautionary jury instructions."  Lightfoot v. Union Carbide Corp. 110 F.3d 898, 912 (2d Cir.

1997).

　　　　In light of the Second Circuit's guidance, the Court will not permit plaintiff to submit to

the jury a specific dollar amount regarding her non-economic damages, including pain and

suffering, in either her opening statement or closing argument.  Plaintiff will be permitted,

however, to submit to the jury during her closing argument a specific dollar amount regarding

other compensable damages she alleges to have suffered as a result of the defendant's alleged

negligence, so long as any figure submitted to the jury has a reasonable basis in admissible

evidence introduced during plaintiff's case in chief and defendant has an opportunity to respond

if it chooses to do so.  Furthermore, the Court will instruct the jury, as is its practice, that

statements by counsel are not evidence or law.  Specifically, the Court will provide the following

instruction to the jury:

> During closing remarks, counsel for plaintiff may have suggested a
> specific dollar amount she believes should be awarded to plaintiff as
> damages for various items.  An attorney is permitted to make
> suggestions as to such amounts, but those suggestions are argument
> only; they are not evidence and you should not considered such
> arguments as evidence of plaintiffs' claims or damages.  Because
> these dollar figures advanced by counsel do not constitute evidence
> and merely represent argument, you are free to disregard these
> numbers entirely in your deliberations.  Your damage award, if any,
> should be based upon the testimony and other evidence received
> during trial.

Such limitations will be sufficient to prevent the jury from being unduly influenced by any suggested damages figure.

### D.  Plaintiff's Request for a Missing Witness Charge with Respect to Robert DuBreuil

Plaintiff requests that the Court include a missing witness charge in its instructions to the jury.  (See Pl.'s Mot. for Missing Witness Charge, Nov. 6, 2017, ECF No. 91).  She bases her motion on the Court's January 7, 2016 Order denying her request for spoliation sanctions based on certain documents plaintiff claims should have been produced.  Specifically, the Court explained in its Order:

> [B]ecause a determination as to the contents of the missing documents is a heavily factual question, one better suited for determination at trial, the plaintiff shall be given the opportunity to present her arguments based on the absence of the subject records at trial.  The defendant will also have the opportunity to present its arguments about the irrelevance of the missing evidence to the jury, who can better decide which theory to believe.

(Order, Jan. 7, 2016, ECF No. 35; see also Pl.'s Mot. for Missing Witness Charge at 2).  While the January 7, 2016 Order addressed missing documents, it made no mention of witnesses, and thus has no bearing on plaintiff's current request for a missing witness charge because Mr. DuBreuil is not available and unwilling or unable to testify at trial.

However, plaintiff also seeks to read the Court's October 31, 2017 Order, which does deal with witnesses at trial, as somehow requiring that defendant must either produce Mr. DuBreuil to give *de bene esse* testimony or designate a new witness to testify at trial.  (See Pl.'s Mot. for Missing Witness Charge at 2-3 (citing Order, Oct. 31, 2017, ECF No. 77)).  The Order imposes no such requirement.  It simply provided that:

> American Airlines has decided not to designate a different 30(b)(6) witness for use at trial.  (See Def.'s Opp'n at 1).  If, however, the

> defendant decides to designate a different 30(b)(6) witness for trial,
> the Court will re-open discovery for the limited purpose of allowing
> plaintiff to depose the newly-named 30(b)(6) witness.   Should
> defendant choose to designate a new witness, it must do so no later
> than November 3, 2017, and the witness must be deposed as soon as
> possible, but in no event later than November 15, 2017.

(10/31/2017 Order at 3-4).  As explained supra, at 7-9, the Court sought only to provide *both*

parties with options for trial, including:  the designation of a substitute witness with the

opportunity for a new deposition; use of the deposition transcript; a subpoena out of the district

in Texas for a videotaped deposition *de bene esse* of the witness; or a subpoena for testimony by

contemporaneous transmission under Rule 43(a) of the Federal Rules of Civil Procedure.  (See

Minute Entry, Oct. 12, 2017, ECF No. 73).  The defendant explicitly advised the Court at the

November 2, 2017 telephone conference that it would rely on the deposition transcript.  Plaintiff

made no attempt to avail herself of the other procedures offered by the Court and the Federal

Rules of Civil Procedure, and thus chose to proceed with the deposition transcript, which she

confirmed by listing DuBreuil as a witness testifying only through deposition and designating

DuBreuil's deposition testimony in the Joint Pre-Trial Order, but giving no indication that he

was a witness whom she would seek to subpoena for appearance at trial through any other

means.  (See JPTO at 14 (indicating that "Robert DuBreuil is a fact witness expected to testify by

deposition at the time of trial")).  It strains all credulity that plaintiff's counsel, after reading the

Court's Orders, participating in the conference with the Court, and drafting the JPTO could in

good faith seek to construe the Court's Orders in this way.

"A missing witness charge is appropriate where the witness is peculiarly within the

control of one party, and his or her testimony would be material."  Rippy-El v. Makram, 2000

WL 426202, 210 F.3d 355 (2d Cir. 2000) (table decision) (citing United States v. Caccia, 122

F.3d 136, 138 (2d Cir. 1997)).  Mr. DuBreuil retired and is therefore not an employee of the

defendant.  He is thus not "peculiarly within the control" of the defendant.  "Plainly, the witness

could have been subpoenaed by either side," either for attendance at trial, for simultaneous

broadcast of his testimony, or to take his testimony *de bene esse*, "and [plaintiff]'s failure to do

so cannot justify a missing witness charge."  Rippy-El v. Makram, 210 F.3d at 355.

Plaintiff's motion for a missing witness charge with respect to Mr. DuBreuil is therefore

denied.

<u>CONCLUSION</u>

For the reasons set forth above, plaintiff's motion *in limine* is denied with respect to

William Meyer, Joseph Pessalano, Jessica Berkowitz, Jerome Harvey and the deposition

testimony of Robert DuBreuil.  With respect to plaintiff's motion to preclude the introduction of

cumulative records and exhibits, the parties are Ordered to confer and agree on the exhibits to be

used at trial so that only one set of each will be admitted into evidence.

Defendant's motion *in limine* with respect to Stanley Ikezi, M.D. is granted.  Dr. Ikezi

may testify only to those facts acquired and opinions formed during his treatment of the plaintiff,

as reflected in his contemporaneously-generated medical records.

Defendant's motion *in limine* to preclude the testimony of Captain Douglas Moss is

granted with respect to testimony regarding any defect in the door.  The Court reserves decision

on whether to allow the remainder of Captain Moss's testimony regarding recordkeeping

requirements, but will preclude such proposed testimony unless the plaintiff explains why such

testimony is relevant, supporting its explanation with clear authority from case law, in a brief

letter to the Court to be filed no later than 8:30 a.m. on <u>November 27, 2017</u>.

Defendant's motion to preclude lump sum and *per diem* arguments is granted in part, as explained in this Opinion.

Plaintiff's request for a missing witness charge is denied.

Jury selection will begin at **9:00 a.m. on November 27, 2017**.  Counsel should be present in the courtroom no later than 8:30 a.m. on that date.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      November 21, 2017

                             /s/ Cheryl L. Pollak
                          Cheryl L. Pollak
                          United States Magistrate Judge
                          Eastern District of New York